Please, the court and counsel, I want to start off by certainly confirming that the district court's error here does require a remand. The guideline calculation added 14 months to Mr. Regg's sentence. If the district court had correctly calculated the guidelines, Mr. Regg's would have received on the second count a 63 to 78 month sentence instead of a 77 month sentence. So there is clearly an error here that would require a remand. So the real question here for the court is, was the district court's determination that the reckless endangerment enhancement an error? I ask you a question about the facts. Are the parties on common ground that there was a car chase here? We didn't object to the probation report. There was a car chase. I read the report. I think it says there was a chase. But in any event, it's a car chase. That's correct. So is the relevant flight here the flight of the car or the flight on foot that followed that flight or both? I think it's both for the guideline. It could be both. Both could be an issue. That's correct, Your Honor. Which of the two was the basis for the finding? The car? We don't know. That's the problem with this case is that we just don't know. I would suggest to the which I think is inappropriate. And I think just based upon the fact that there aren't findings here, it should be remanded to the district court. Maybe. But we have some cases that say if the judge doesn't spell it out, but it's clear from the record that it's supportable, we can affirm. Absolutely. That's why I was asking which of the two would be likely. And if we look then at that issue, I would suggest that there's strong case law in this circuit that says the car case certainly doesn't give the district court or this court enough to find that there was reckless endangerment here by Stephon Riggs. There is no suggestion. First, Mr. Williams was driving the vehicle. Mr. Williams, when he was apprehended, had firearms on him. So he's armed. There's no suggestion in the PSR that either Mr. Williams or Joshua Riggs suggested that somehow Stephon Riggs was telling the driver to keep going, telling Mr. Williams to speed up or do anything or assist it in any way in that flight. Additionally, one of the differences here, too, is that the flight doesn't happen immediately upon getting into the victim later on. So the decision to speed away isn't immediately connected to leaving the scene of the robbery. So there is a break in there. So this is Mr. Williams' decision, is what the record suggests, solely to speed away. So I don't think you can infer upon Mr. Stephon Riggs liability or aiding and abetting liability for the act of the car speeding away. After the accident, all three of the occupants leave the car. All three run. And there is a police chase by foot. What we do have in the record from the PSR is that Mr. Williams and Mr. Joshua Riggs were basically physically tackled by law enforcement and arrested. One of them had a firearm? Mr. Williams, if my recollection serves. Do we know from the record how close they were to each other when they were apprehended? We do not. At least not in the probation report. It just suggests that they were apprehended shortly after the car crash and shortly after they left the vehicle on foot. The only difference between Mr. Williams, we can set Mr. Williams aside as the driver. I think it would be clear everybody would agree he would deserve the enhancement as the driver speeding away and causing an accident. The only difference then between Mr. Joshua Riggs and my client, Stephon Riggs, is that one was able to flee and get away from the police during the foot chase. And there is good case law in this circuit as well that just simply running from law enforcement isn't enough. There has to be a little more to suggest the reckless endangerment here. Also, the standard is reckless endangerment that created risk of death or serious bodily injury, which is a pretty high standard. That's correct. And I think when you look at this court's opinions on the cases, it's, for example, I believe it's in Bates when the gentleman points the gun at the police officer and he gets the enhancement in that case. That's creating a risk where an officer could have been shot. Or when there is the classic example is the struggle on the ground after a tackle occurs by a law enforcement officer and there's a firearm between them or there's evidence. There wouldn't be a substantial risk of this before the actual tackle, but during the chase itself, that wouldn't be enough just to chase? I don't believe there is without more, without a suggestion that either Stephon Riggs pointed a gun at the police officers, created a situation where he ran through traffic, put people in danger. I think if you had a high speed chase and some evidence of that and some evidence of your client's involvement, and I understand you're saying there's none, but that coupled with all of them or some of them being armed might carry the day in favor of the enhancement, but we don't have that case. Let me ask a further question, if I may, about the state of the record, please. Is the only evidence about what happened with respect to this chase or these chases what appears in the PSR? On this record, that is the only evidence. Yeah. And that's admitted. We can take those facts as true. We did not dispute the factual findings in the PSR. Do you think the car chase created the sufficient level of danger so that the only issue is whether Riggs was responsible for Williams driving away like that? With all candor to the court, I think that that's what this court has concluded, is typically high speed chases that result in accidents. So then it comes down to whether there's an inference available that Riggs is responsible for that and the ordinary relevant conduct principles don't apply here, as I understand it. That's correct, Your Honor. So the government had to show that Riggs, as you said, aided and abetted or somehow otherwise caused the flight. That's correct, Your Honor. These guys were co-conspirators in the robbery? No doubt about that. So the purpose of the flight was to avoid apprehension for their joint robbery? No doubt about that. So why doesn't that support a finding that Riggs aided and abetted Williams in their effort to avoid detection? Because that's not what this court has instructed. It's not just being present in a speeding car that gives chase. This court has made it clear. Being present with a co-conspirator, have we said that? Yes. There has to be. This circuit has certainly suggested there has to be something more than just being in the vehicle. It would be unfair and perverse to suggest you can commit a crime and then you get in a car and you drive away, and then if the driver has a gun and the driver is driving away and runs and you want to stop but they keep going, how would that be fair enhancement? Is there any evidence in the record about the planning of the robbery and the planning of the getaway? There's no evidence of the planning of the getaway with the exception of the fact that they stole a vehicle prior to the robbery or two of the, Mr. Williams and Joshua Riggs stole a vehicle prior to the robbery and brought it to the scene. That was the getaway car. That was the getaway car, yeah. I'm sorry, go ahead. I was going to ask if you wanted to save any time, but we'll give him some more if you have a question. Okay, just a quick question. The government seems to suggest that your client created this kind of risk during the foot chase by making it easier for the other people to avoid being captured. What do you say to that argument? One, I would say you can say that about every chase, whether it's the car chase or a foot chase. Any time somebody runs from law enforcement, there is the potential, obviously, of creating extra danger. But that's not the standard. There has to be something that goes beyond just merely fleeing from law enforcement in order to get the enhancement. And in this case, Well, I mean, you could be fleeing if the people weren't armed. That would be a case that wouldn't involve probably on those facts. We don't But here, at least one of them, how many of them were armed? What's the state of the other? So the state of, my client, Stephan Riggs, certainly had a firearm in the robbery. There's no evidence. The firearm that he was using in the robbery hasn't been recovered. So we don't know. What about the other two? I believe it's Mr. Williams who had two firearms on him when he was tackled. Thank you. Sorry. I did want to reserve some time, but obviously I haven't. Well, just to finish that thought, though, I think the question was did your guy recklessly endanger other people by fleeing? And I guess the idea would be causing law enforcement to devote attention to Riggs, which made it more likely that Williams would be a danger with his guns. I think that's, if I understand the theory, I don't know if you directly addressed that. I didn't. And if I could just have a brief. Yes, please. Again, I think that the problem with this logic that, well, maybe a danger could have been created, is then it creates a situation where this enhancement would apply to any flight because that is the possibility. But this record doesn't have anything in it that suggests the fact that Stephan Riggs ran from the scene and along with his other two co-conspirators, the fact that he ran and wasn't caught, that that created actually any danger. And I think it's not the enhancement doesn't apply when there's the potential or the possibility. It's when there is actually a danger created by the defendant's conduct. And this record doesn't have that in it. Going back to your very first point, you say the guideline range without the adjustment would be 63 to 78? That's correct. 77, which is within that range. But your thought is that the judge might have gone lower in the range if the range had been lower? The judge sentenced at the bottom of the guideline range. I think Davis, the Ace Circuit's case in Davis and Robinson, certainly recognized this potential that if it is at a bottom-of-the-box sentence and the guidelines change that bottom-of-the-box, the judge might have sentenced differently. Especially when there is, in this case, no other, there's no 3553A factors discussed, things like that, to suggest that he would have departed upwards or downwards in any way. Please, Judge Shepard. Can you, can the court take into consideration circumstances preceding events and facts and circumstances preceding the alleged endangering circumstance? I think the court has done that. I certainly, in my practice in district court, district courts do do that. Okay, so if you can, if that's permissible, in this case, didn't, and I may be confusing this with another case, but wasn't a firearm actually used and discharged during the perpetration or immediately after the perpetration of the crime? It was during both. The store clerk was pistol-whipped by my client, and when the store clerk fled from the store, there's evidence that my client followed and shots were fired. But the cases that have addressed looking, and it's a very, they're outlier cases, and when they have looked at taking into account pre-flight conduct, the pre-flight conduct they're looking at is conduct related to the flight. So what do the defendants know during the flight? Are the roads really icy? Have they created a situation to basically prompt them for a high-speed chase or create a danger in that flight? I think, obviously, every crime like this is inherently dangerous, and, again, that's not what this enhancement is about. It's about the conduct and the danger that's created during the flight, and simply because a firearm was used during the flight, or during the actual commission of the crime, I don't think that means you automatically get to apply that to what happens on the flight. Right. Well, I was just thinking, and it may not be, maybe it doesn't have any merit, but I was just thinking if you have a scenario like this where perpetrators have actually been willing to use a weapon, it might bolster the argument that the defendant, by his flight, with his accomplice who is armed, it might indicate increased danger in that the firearms had been used by the perpetrators during the commission of the crime. I don't necessarily disagree with you, Judge. I just don't think that should be the case here, because there is not that tie of a history of Mr. Regs using a firearm during flight in the past or that a firearm was pointed out of the car or waved in the back of the car during the flight. So I think there needs to be some connection to the use of the firearm or the firearm itself with the flight for the enhancement to be applied. Otherwise, he's getting double counted in some ways by the fact that he used a firearm. All right. Mr. Morrison, any further? We note, by the way, that you were appointed under the Criminal Justice Act, and the court appreciates your willingness to accept the appointment. It's a privilege I have. Thank you for your argument. We'll hear from the government. Mr. Cheever. Thank you, Your Honor. I apologize for being late. You beat me to the room, and it shouldn't happen. The clock said 1.14. I know. I noticed that. Thank you, Judge. May it please the court. The court was early. May it please the court. I'm Mike Cheever. I represent the United States. I have at counsel's table with me a law student, a law intern, Kara Murphy of St. Thomas Law School. Thanks for letting her participate. You didn't let her argue the case, though. No, we didn't go through that. But I have too much fun at these, mostly. I have a lot of fun. What do you have to say about this issue? I want to work backwards and address some of the comments the court made, which may not be very well structured. But let me start with one point where we left off, which was this idea of double counting. It's not double counting. It's just not. The judge gets to take that into consideration with the advisory guidelines. Let's start with the hard question, which is whether there's any evidence here that your man, I mean that Riggs was the one who was causing any reckless endangerment. I did not. Honestly, I thought the harder questions were the inconsistent or arguably inconsistent holding on the co-defendant and the lack of specific findings. Because I think this case is actually, as these black box passenger cases go, where there's a reckless endangerment during flight by the driver, but there's not evidence of actions by the passenger. As those cases go, this is as good as I've seen in all of the circuits. And Judge Shepard hit on it in one major respect, which is Mr. Riggs said in talking to the probation officer that he knew going into this robbery it was a big deal. It was a takeover armed robbery. And as big as that was, the need for that quick getaway on icy roads, or at least on a snowy night, was made much more urgent and serious when the defendant shot at the store clerk. But I understand that they didn't speed away from the scene. There's no evidence. We don't see them speed away. But I don't think that's the factor. What we know is when the police officer 22 minutes later pulled up, they still had all of the evidence of the crime, including the store clerk's wallet and phone. You're saying the need to speed away was heightened by what happened in the back? Well, we don't know if they did do it right then, but we know that they were still aware of that when the police officer pulled up behind them. And we don't know what they discuss at that point, but when the officer shines the flashlights and says, put up your hands, nobody puts up their hands. They speed off. And all of the urgency. There's just very little in the record about the nature of what happened during this chase. That's true of all of it. Like I say, I call them black box passenger cases, and it's true. Illuminated by having witnesses testify. Could have had a hearing on it. Yeah, I agree, Your Honor. Not you, but one could have. One could have. This is one issue that I think some procedural background might be helpful. The government put itself in its own box when it reached a plea agreement with the co-defendant. Before this defendant, Stefan Riggs, was charged. It made a plea agreement with Joshua Riggs. It agreed the enhancement didn't apply. And then it figured out that was a mistake. The fact that Joshua Riggs got that benefit doesn't mean there's error in applying the enhancement to Stefan Riggs. Nobody's argued that, really. No, I agree. If he supported it here, then it could be applied, even if the other guy got a break. What I'm saying is the government, because the other defendant was having his sentencing after Stefan Riggs, the government could not rightly put on the kind of evidence that it ordinarily would because it had to abide by the plea agreement with the co-defendant. That's my point. You're explaining why the record is there. Yes, I am. You still have to decide this case. I agree. I agree. I just wanted to shed some light on that. Thanks for that. You mean he could have been a witness, the other defendant? There's a lot of could-haves that aren't in the record. The police officers, they could have testified. Yes, they could have. We don't have that. What we do have is some specific findings in the PSR and a couple of findings by the court at Mr. Riggs' sentencing, including the fact that he shot at the clerk. That was agreed to in the PSR. There weren't any objections to that. Mr. Riggs tried to say, no, I just shot up in the air, and the judge shot that down. It was conceded. He just says that didn't have anything to do with the fine. I agree, but it shows the district court had that in mind. That was a significant fact, as Judge Shepard might suggest. I think it alerted the neighborhood. It made the urgency when a police officer walks up behind them and has them. They're in a stolen car. They've got all the evidence in there. And we know the defendant isn't thinking or telling the defendant, don't flee, because the defendant did flee. When the car crashed, he got out and ran. And so there's this small gap of wondering what happened in the car. We know he wasn't telling the guy, no, let's turn ourselves in. Because he fled later? Yes. After a short flight, he gets out and runs. It makes it less likely that he's saying, don't flee. It makes it highly unlikely. And it makes it highly unlikely he's sitting there thinking to himself quietly, oh, I think we should turn ourselves in. He got out and fled. And so there's this narrow gap of did he, does the district court- Is there a basis to say he counseled, commanded? Right. Is it more likely than not that he did? It's a preponderance standard. There's another standard I want to emphasize. What is the basis? You just want to say based on the circumstances, we should infer that he said something to William? I do. I want to say that he- William's just going on his own? I think it was induced by, I mean, I think the shooting at somebody and pistol whipping somebody counts as aiding and inducing. But also you've got this question, is he in a car speeding away from police saying, no, stop, let's turn ourselves in? He's not. He doesn't have to be. No, he needs to say something. But is it more likely than not? In the cases of Conley- He doesn't seem to say anything. If he says nothing, then how do you win? By the inducement- You're saying that what he did in the bank induced William to flee- In the convenience store, yes. In the store? Yes. And that's the type of- Do you think we should write an opinion that says he induced William to flee later by shooting in the store? Yes. They knew a getaway was going to be required, and when he fired the shot- I think that you should find more likely than not that he was encouraging. They had the time when the police officer's walking up. He's not raising his hands when the police officer shines the flashlight in and says, raise your hands. They speed off. We know that. Is there a video? No, there's no video. Not that was admitted as evidence. What's in the record is that the police officer shined the light in, told him to put their hands up, and it's in the PSR. I can't give you the paragraph. Well, you just said that he held his hands up. There's no evidence that he held his hands up. I mean, the police officer doesn't say one- Well, there's no evidence one way or the other on the position of his hands. Right, but you would think he might put that in if that was what happened. The defendant doesn't have the burden to put any evidence in to that extent, but it is significant to the government's burden that there's not contrary evidence. The defendant's not claiming he said stop. The defendant's not claiming he put his hands up. That's not his burden to do that, but there's nothing in the record contrary to the district court's finding that this enhancement applied. Going to the concern or the question I think a couple of the judges raised, the PSR focused on the car chase. It didn't focus on the flight after the fact. So I think it's fair to read Judge Davis' finding as being based on the car chase. For me personally, I like the argument that when multiple people who are armed flee, it makes it more dangerous for the police who end up having to tackle those armed people. The defendant was armed and the- Williams was armed and the guns had fallen down into his pants. I want to make sure before I run out of time I make- We have a little bit of a time problem. Yeah, I understand. We also gave your counterpart some time, so go ahead. Let me make one point on the burden of proof. The government had that in the district court. The standard here is still clear error, and the defendant has not in his briefs or in his argument today suggested that that standard is met. He only argues that there's error. He argues that this court had said that there's somehow a de novo review in his brief, and he cites to Balzadua, and that's not in that case, and that's contrary to what this court has always held, where it's a fact-bound guideline finding, is that that's a clear error standard. And we know Judge Davis addressed that standard. It was briefed clearly and accurately to him, the standards of the law by the defendant. The defendant tried, you know, pointed out that he was making that objection and maintaining it, and the judge shut him down and said, I'm going to deny it. There wasn't discussion at the sentencing, but the judge denied it specifically when the issue was raised, and he adopted the PSR, and that is a finding by the court. It's not ideal. We all wish we had specific findings by the judge, and he should have done it. We should have asked for it. Defendant could have asked for it. We didn't get that, and so the question for the court is different than in the cases that the defendant cites of, say, there's a Third Circuit case, Suspedes, where in almost all of the other cases, the black box cases involved the district court applying the wrong standard. It applied 1B1.3, the reasonable foreseeability. What's the black box case that you say is helpful to you? Two of them are Conley from the Tenth Circuit and Bird from the Sixth Circuit. One of them, I think the defendant was the driver, and the other one, yeah, Bird was a driver, right? No, I think maybe Bates I rely on were. Bird and Conley were passengers, and the district court made specific findings on facts that aren't as compelling here but that are like those here of the armed robbery, or Bird wasn't even armed, the planning. Right, Bird's brother was driving. Yeah. Okay, well, we'll look at those. Yeah, I appreciate that. I think I've covered the points I wanted to be sure I made. I hope I've answered your questions. In terms of, I guess I don't know that I answered your first question, Judge, which is to highlight all of the reasons which are there, I've done it in my brief. This was a family. This was a joint enterprise. This was a planned getaway. This was a case where you knew that there was going to need to be flight, and there was flight when the police caught them or approached them, and there was flight on foot. And so it's certainly a strong case factually. What's weak is the district court's specificity of spelling out why it did what it did, but this court should not find that the court clearly erred in finding this enhancement applies. It wasn't error. The enhancement was applied correctly to this defendant. Okay. Thanks for the extra time. You're welcome. We'll give one minute for rebuttal, then, Mr. Morrison. I just want to, it's page 4, paragraph 9 of the PSR. That is the totality of the factual record about this chase. That's it. What about these two cases, Conley and Byrd, where the passenger, there was no direct evidence, but the courts upheld the findings based on circumstantial evidence? So Byrd was the driver at first. So Byrd starts out as the driver. They crash a car, get into a second car. Therefore, you can infer that he wanted the other guy to also speed. Absolutely. And in Conley, Conley is the pre-planning. The roads are bad. And I addressed this in my reply brief, and I can't remember all the facts off the top of my head as I stand here. But Conley was just as distinguishable. And they're both outliers. But I think on this record, and the last point I want to make is I did want to argue this issue in front of the district court, and I was shut down. I wasn't given an opportunity to attempt to make more of a record or argue about the issue. It does need to be remanded. You mean you weren't allowed to argue it. I wrote a brief. I wrote in my position pleading about this issue, about the enhancement wasn't applicable here. I got up to argue in my sentencing argument about it, and I was told, no, I'm going to apply it. And the argument was over and shut down by the district court. I understand, as an advocate, I can always push and push and push. But at the same time, I'm trying to get- Your time's expired. Sometimes you're out of luck. Thank you. You haven't been shut down here, right? You've been given all the time you want? Or do you want more time? Today I got more than I wanted. So you're happy we won't see in the rehearing petition that you were shut down by the panel? No, I promise you, Judge. Very well. Thank you both for your arguments. The case is submitted, and the court will file an opinion in due course. The court will be in recess until 9 o'clock tomorrow.